UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-20147-CR-KING

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ANGELA M. FRYE,                                    REPORT AND RECOMMENDATION

        Defendant.
_____/

     On or about October 3, 2011, court-appointed defense counsel Roderick Vereen ("Counsel") submitted a voucher application numbered FLS 11 2121 with appended time sheets requesting $44,007.50 as final payment for attorney's fees and costs pursuant to the Criminal Justice Act (the "CJA").  Counsel also supplied time sheets and a Supplemental Information Statement for Compensation Claim in Excess of the Statutory Case Compensation Maximum form (the "Statement") in support of his voucher application. Counsel represented Defendant Angela Frye ("Defendant") for five (5) months from March 20, 2011 until August 26, 2011.

     Counsel seeks  $44,007.50 in his application, an amount which exceeds the $9,700.00 statutory maximum allowed for representation in non-capital felony cases under the CJA. As a result, United States District Court Judge James Lawrence King entered an Order of Reference **[DE # 124]** referring the voucher application to the undersigned for a Report and Recommendation as to whether the fees requested by Counsel are appropriate. *See* 28 U.S.C. § 636(a)*; see also* United States District Court for the Southern District of Florida Magistrate Judge Rules.

## Criminal Justice Act and Guidelines for Administering
## the Criminal Justice Act

The United States Judicial Conference developed the Guidelines for Administering the CJA and Related Statutes (the "Guidelines") to assist courts in the application of the provisions of the CJA. *See In re Burger,* 498 U.S. 233, 234, 111 S.Ct. 628 (1991). In the Guidelines, judges are "urged to compensate counsel at a rate and in an amount sufficient to cover appointed counsel's general office overhead and to ensure adequate compensation for representation provided." *See* Section §630.20 of the Guidelines.

The CJA at 18 U.S.C. §3006A(d)(1) provides that at the conclusion of CJA representation, an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed "for expenses reasonably incurred." The district court, as the body empowered to "fix" CJA appointed counsel compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. 18 U.S.C. §3006A(d)(5); *U.S. v. Griggs,* 240 F.3d 974 (11th Cir. 2001). In order for the recommended fee amount to exceed the statutory maximum, however, the district court *must* first certify that the case involves "complex" or "extended" representation. 18 U.S.C. §3006A(d)(3). Second, the district court must conclude that the amount is necessary to provide Counsel with fair compensation.

A case may be considered "complex" if the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case. *See* Section §230.23.40(b) of the Guidelines. A case may be considered "extended" if more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings. *Id.*

-2-

## DISCUSSION

### This Case Was Complex

Under the Guidelines, in order to approve compensation in an amount in excess of the statutory maximum, I must first find that the representation was either complex or extended. This case was complex for several reasons.

First, the very nature and number of charges involved in this case required Counsel to expend more time, skill and effort than normally required in the average case. This case commenced when the grand jury issued an Indictment **[DE # 3]** naming Defendant and three (3) co-defendants.

The Indictment contained twenty-three (23) counts. The government alleged that Defendant and the codefendants were involved in a mortgage fraud conspiracy scheme to recruit straw buyers to purchase residential properties. The purpose of the scheme was to obtain money from various banks and lending institutions to finance the purchase of the properties through materially false representations and fraudulent pretenses concerning the true purchasers of the homes.

The scheme required the straw buyers to pose as home buyers when, in fact, the straw buyers were not to be either the true owners of the homes or responsible for making the monthly mortgage payments. Rather, other unnamed third persons were to be the true owners of the properties. In the scheme, the straw buyers would purchase the homes at highly inflated prices by obtaining mortgages on the properties. The true owners of the properties would fail to make payments on the mortgages and default on the loans. The various banks and lending institutions would be forced to foreclose on the properties,

-3-

suffering large losses.

The government charged Defendant with conspiracy to commit wire and bank fraud, wire fraud and bank fraud.  Defendant  faced a maximum sentence of thirty (30) years imprisonment for the conspiracy charge and each of the bank fraud charges.  Defendant also faced a term of twenty (20) years imprisonment for each of the wire fraud charges.

Second, this case was extremely document intensive.  According to Counsel, this case involved "a voluminous amount of discovery which consisted of 4 disks containing a number of recorded audio calls as well as 48,795 pages of banking records, loan applications, mortgage records, closing documents, real estate transactions, cancelled checks and HUD records."  (Supplemental Information Statement).  Counsel further explained that there were "sixteen 90 minute audio tapes" containing recordings of conversations involving Defendant that were made by cooperating witnesses. (Supplemental Information Statement).  In total, the government produced 20 banker boxes of evidence.  The volume of documents which Counsel had to review in order to effectively represent Defendant rendered this case more complex than the average case.

Third, although Defendant eventually entered a plea of guilty, this matter only settled shortly before trial. As Counsel explained, the "all of the codefendants pled guilty.  The defendant was the last one to plea due to the fact that there was a disagreement as to the level of involvement that the government was trying to hold the defendant accountable for." (Supplemental Information Statement). Counsel was readying for trial at the time that Defendant pled guilty.  Consequently, Counsel was required to expend a larger number of hours than normally generated in the average case which results in a guilty plea.

-4-

It is clear from the record that the legal and factual issues in this case were unusual. Consequently, I conclude that this matter required the expenditure of more time, skill and effort by Counsel than would normally be required in the average case. As I have concluded that the representation provided by Counsel was complex, I must review the voucher to determine the appropriate amount for which Counsel should be compensated in excess of the $9,700.00 statutory maximum.

### *Voucher Amount - Administrator's Review*

The Court's CJA administrator first reviewed the voucher for compliance with the Guidelines and mathematical accuracy prior to my review. Counsel requested compensation for only 1.2 in-court hours totaling $150.00. The CJA administrator made no changes to the in-court hours listed in the voucher.

The CJA administrator also reviewed the 350.7 out-of-court hours sought by Counsel. Counsel sought compensation for 24.5 hours for "Interviews and conferences" and 306.1 hours for "Obtaining and reviewing records."   Counsel also listed 2.0 for "Travel time" and compensation for 18.1 hours for Legal research and brief writing. Counsel did not seek any time for "Investigative and Other work."

The CJA administrator made just one change to the out-of-court hours listed in the voucher. The CJA administrator decreased the total number of hours sought by Counsel for "Obtaining and reviewing records" from 306.1 hours to 305.1 hours.   Counsel sought only $20.00 for "Travel Expenses." After making the adjustment described above, the CJA administrator concluded that the overall total amount documented by Counsel in the voucher decreased slightly from $44,007.50 to $43,882.50.

### In-Court Hours[1]

Counsel sought 1.2 in-court hours totaling $150.00. Again, the CJA made no change to these figures. I approve the amount of $150.00 as reasonable.

### Out-of-Court Hours

In the voucher, Counsel sought 350.7 out-of-court hours. The CJA administrator reviewed the voucher and slightly decreased the total number of out-of-court hours to 349.7 for a total of $43,712.50 (from $43,837.50). I approve this reduction.

In initially reviewing Counsel's voucher application, I was immediately struck by the extremely large number of out-of-court hours billed by Counsel. Further, Counsel's voucher was replete with entries for out-of-court hours that were so unspecific that the undersigned could not determine the purpose of the entries. Counsel's voucher contained the following entries, for example:

| | |
|---|---|
| Reviewed Discovery (218 pages) | 5.0 hours |
| Reviewed Box 01-003 (132 pages) | 4.2 hours |
| Reviewed Box 01-010 (145 pages) | 4.5 hours |
| Reviewed Box 01-006 (21 pages) | 1.0 hour |
| Reviewed Box 02-219 (149 pages) | 4.5 hours |
| Reviewed Box 02-220 (158 pages) | 5.0 hours |
| Reviewed Box 02-021 (148 pages) | 4.4 hours |

---

[1]

The undersigned defers to the Court Clerk to verify all in-court time and expense allowances.

Counsel's voucher includes three (3) single-spaced pages of similarly vague entries. What was also striking to the undersigned is the breakdown of the out-of-court hours sought by Counsel by category. Counsel spent the vast majority of his time, 305.1 (as corrected by the CJA administrator), "Obtaining and reviewing records" and spent very little time, only 18.1 hours, performing "Legal research and brief writing."

After reviewing the voucher, I requested that Counsel come to chambers to explain these vague entries. Counsel and I met on January 10, 2012 to discuss my concerns regarding the significantly large number of vague entries included in the voucher. During that meeting, Counsel willingly provided chambers with CD-ROM's so that the undersigned could have an opportunity to personally review the four disks containing the discovery in this case (referred to on the time sheets as "Reviewed Box _____) (___ pages)".

Upon review of the CD-ROM's, it must be noted that some - although certainly not all - of the pages were blank or unimportant documents such as superfluous pages of corporate incorporation records or bank statements that did not require anything more than Counsel glancing at the page and moving onto the next document without pause. Many of the documents were copies of checks or driver's licenses that did not require lengthy review.

Counsel has been most cooperative in trying to satisfy the Court's concerns regarding the very large amount of hours he incurred "Obtaining and reviewing documents".[2]  To his credit, Counsel understood the Court's concern and tried to justify the large number of hours

---

2

During my January 10, 2012 meeting with Counsel to discuss the voucher, I asked Counsel whether he had considered hiring an investigator (at a lower hourly rate) to assist him in reviewing the tremendous amount of discovery in this case. Counsel replied that he prefers to review all of the documents in a case himself.

sought in the voucher. After my review of the disks provided by Counsel, however, I recommend that Counsel should be compensated for 153 hours for "Obtaining and reviewing records", which amounts to half of the time that Counsel billed. Upon review of the docket, the file and the discovery in this case, coupled with Counsel's voucher application and his explanations concerning the out of-of-court hours included in the voucher, I conclude that my reduction of the number of hours Counsel sought for "Obtaining and reviewing records" results in fair compensation for Counsel.[3]

I also asked Counsel about the vague entries (amounting to 15.6 hours) described simply as "Researched case law." At the time of our meeting, Counsel did not have his notes to explain these entries. Accordingly, I requested additional information from Counsel regarding these entries. Counsel subsequently contacted chambers and provided a written explanation of these entries.

I conclude that Counsel's explanation of the nature of the case law research is justified and I approve the 15.6 hours incurred by Counsel for researching case law. The remaining out-of-court hours sought by Counsel (as adjusted by the CJA administrator) in the other categories in the voucher application are appropriate. Making this reduction explained above, I recommend that Counsel be paid a total of $24,700.00 for his out-of-court hours.

---

[3]

The United States Court of Appeals for the Eleventh Circuit has explained that "[w]here fee documentation is voluminous, such as in the instant case, an hour-by-hour review is simply impractical and a waste of judicial resources." *Loranger v. Stierheim,* 10 F.3d 776, 783 (11th Cir. 1994). Accordingly, I will not undertake an hour-by-hour review of the 305.1 hours Counsel seeks for "Obtaining and reviewing records."

In making this recommendation, I have been mindful that when considering awards to Counsel under the CJA, courts have long recognized that there is an inherent tension between the policies underlying the CJA: "[o]n the one hand, representing indigent defendants is a form of public service; thus, the [CJA] was never intended to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice. . . . On the other hand, the Act was also intended to provide indigent defendants with meaningful representation by competent counsel". *United States v. Mukhtaar,* 2008 WL 2151798, at * 2 (S.D. N.Y. May 21, 2008) (citations omitted). As other courts have explained, the CJA "was intended to partially alleviate the financial burden associated with provision of these services which had been traditionally provided pro bono. The spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially pro bono nature." *United States v. Diaz,* 802 F.Supp. 304, 307 (C.D. Cal. 1992) (quoting *United States v. Carnevale,* 624 F.Supp. 381, 383 (D. R.I. 1985)). In considering these principles with respect to the instant case, I conclude that an award of $24,700.00 for out-of-court hours, is fair, although admittedly not full compensation for Counsel's services.

## CONCLUSION

I commend Counsel for his willingness to take this appointment; the undersigned is appreciative of his efforts. Notwithstanding this appreciation, as I have often quoted, when appropriate and in the spirit of the CJA: "What is commendable, however, is not necessarily compensable." *U.S. v. Smith,* 76 F.Supp.2d 767, 769 (S.D. Texas 1999). It is with this sentiment in mind that I recommend that some of the time incurred by Counsel be considered non-reimbursable.

To be clear, I am not making this recommendation for a lack of appreciation, rather, it is because the courts have the inherent obligation to ensure that claims for taxpayer provided monies are properly spent. As I explained above, however, because the representation in this case was complex, I recommend that Counsel be reimbursed for an amount in excess of the statutory maximum of $9,700.00 in this case.  Based upon my review of the time sheets, the Supplemental Information Statement, the docket and filings in this case, I RECOMMEND that Counsel be paid $24,870.00 as fair and final compensation for his work in this case.

In accordance with 28 U.S.C. §636(b)(1), the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file any written objections with the Honorable James Lawrence King, United States District Judge.

Signed this ___ day of January, 2012.

PETER R. PALERMO
SR. UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
        Roderick Vereen, Esq.
        Lucy Lara, CJA administrator

-10-